[Cite as *In re E.F.*, 2017-Ohio-7474.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| E.F. | Case No. 2017 CA 00072 |
| MINOR CHILD | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2016 JCV 00279 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 6, 2017 |

APPEARANCES:

For Appellee

BRANDON J. WALTENBAUGH
STARK COUNTY JFS
402 2nd Street, SE
Canton, Ohio 44702

For Appellant

DAVID L. SMITH
Post Office Box 20407
Canton, Ohio 44701

*Wise, John, J.*

**{¶1}** Appellant-Mother C.F. appeals the judgment of the Stark County Common Pleas Court, Juvenile Division, awarding permanent custody of her minor child E.F. to appellee Stark County Department of Job and Family Services.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On April 1, 2016, SCJFS filed a complaint alleging the dependency and/or neglect of E.F. (DOB 3/29/2016). Appellant is the biological mother of E.F. The allegations of the complaint centered on Appellant's history with Summit County Children Services including involuntarily losing permanent custody of a previous child, lack of follow through with case plan services in the past, and continuing deplorable home conditions.

**{¶3}** On April 4, 2016, the trial court found that probable cause existed for the involvement of SCJFS and placed the child into its emergency temporary custody.

**{¶4}** On June 15, 2016, SCJFS deleted the allegation of neglect, and the trial court found E.F. to be a dependent child and placed her into the temporary custody of SCJFS. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home.

**{¶5}** The case plan proposed by SCJFS and adopted by the trial court asked Appellant-mother to complete assessments through (1) Northeast Ohio Behavioral Health (hereafter "NEOBH") and follow all recommendations, (2) receive mental health counseling and be medicine compliant, (3) complete parenting classes through Goodwill Industries, (4) obtain stable and appropriate housing, (5) obtain stable verifiable employment or other source of income to sustain the housing and care for E.F., (6) attend

all medical appointments and comply with taking her medications, and (7) attend joint counseling with Mother and Father to address relationship issues if they were to stay together. (T. 1. at 6-7).

{¶6} On October 14, 2016, the trial court reviewed the case. The trial court found that Appellant was diagnosed with several mental health issues, had not yet completed her parenting evaluation, had a low IQ, and was not attending parenting classes. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home. The trial court also found that no compelling reasons existed to preclude a request for permanent custody.

{¶7} On January 20, 2017, SCJFS filed a motion seeking permanent custody of the child. In its motion, SCJFS alleged, among other things, that the child could not and should not be placed with Appellant-mother within a reasonable amount of time, Appellant-mother had her parental rights terminated pursuant to R.C. §2151.353, R.C. §2151.414, or R.C. §2151.415 with respect to a sibling, and permanent custody was in the child's best interest.

{¶8} On January 24, 2017, SCJFS filed an amended motion seeking permanent custody of the child. The amended motion was substantively equivalent to the original motion.

{¶9} On February 17, 2017, the Guardian ad Litem for E.F., Ms. Valerie Anderson, submitted a report recommending that E.F. be placed into the permanent custody of SCJFS. Specifically, Ms. Anderson noted that it was "absolutely imperative

that SCJFS (be) granted permanent custody", and that Appellant-mother "simply do(es) not have the parental skills necessary to keep (E.F.) well cared for and safe".

{¶10} On February 21, 2017, the trial court again reviewed the case. The trial court found that Appellant-mother was diagnosed with a mood disorder and personality disorders. The trial court also found that there were concerns with Appellant's ability to parent. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home. The trial court again found that no compelling reasons existed to preclude a request for permanent custody.

{¶11} On March 22, 2017, the trial court heard evidence on the motion seeking permanent custody of E.F. (T. 1 at 4-105). At the hearing, SCJFS presented evidence regarding Appellant-mother and the minor child. (T. 1 at 5-64). Caseworker Vicki Mitchell testified that Appellant-mother had not fully completed her case plan nor had she significantly reduced the risk she posed to E.F. (T. 1 at 8-22). Specifically, Caseworker Mitchell testified that Appellant-mother did not address her mental health issues, did not initiate joint counseling, did not complete the minimal requirements for parenting classes, did not have appropriate housing, and struggled with basic parenting skills like changing a diaper. (T. 1 at 7-19). Ms. Mitchell also testified that Appellant-mother had previously lost permanent custody of a child. (T. 1 at 6). Dr. Aimee Thomas from Northeast Ohio Behavioral Health testified that Appellant-mother has an IQ of 66 and is functioning at the level of an eleven-year-old child. (T. 1 at 49). She diagnosed Appellant-mother with a Mood Disorder and Other Specified Personality Disorder, and noted Appellant's dependent traits. (Tr. 1 at 49-54). Dr. Thomas opined that it would be critical for Appellant-

mother to participate in mental health treatment, psychiatric services, take all prescribed medication, joint counseling, parenting classes, and maintain gainful employment and appropriate housing. (T. 1 at 55-56). She also stated that she had "serious concerns" about Appellant-mother's ability to complete a case plan. (T. 1 at 54).

**{¶12}** Appellant-mother also presented testimony. (T. 1 at 65-82). The hearing was continued to a later date to allow for the presentation of additional testimony and evidence. (T. 1 at 107).

**{¶13}** On April 11, 2017, the trial court again heard evidence on the motion seeking permanent custody of E.F. (T. 2 at 4-23). At the hearing, SCJFS again presented evidence regarding Appellant and E.F. (T. 2 at 4-11). Caseworker Mitchell testified that E.F. had been placed with a biological sibling who had been adopted by the foster family, E.F. was bonded to the foster family and to the sibling, and that the foster family was interested in adopting E.F. (T. 2 at 2-10). The Guardian ad Litem for the child made a statement recommending that permanent custody be granted to SCJFS. (T. 2 at 22). The foster parents of the child also made statements. (T. 2 at 22-23). Appellant also offered testimony. (T. 2 at 12-17). At the conclusion of the hearing, the trial court took the matter under advisement. (T. 2 at 23).

**{¶14}** On April 12, 2017, the trial court issued its findings of fact granting permanent custody of E.F. to SCJFS and terminating Appellant-mother's parental rights. Specifically, the trial court found that, despite reasonable efforts by SCJFS, E.F. could not and should not be placed with Appellant-mother within a reasonable amount of time, and the grant of permanent custody was in her best interest.

**{¶15}** Appellant-mother now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶16}** "I. THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

A. THE TRIAL COURT ERRED IN FINDING APPELLEE MADE REASONABLE EFFORTS TO PREVENT THE NEED FOR PLACEMENT AND/OR MAKE IT POSSIBLE FOR THE CHILD TO RETURN HOME.

**{¶17}** "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

**{¶18}** Appellant-mother argues that the court's finding that E.F. could not be placed with her within a reasonable period of time was against the manifest weight and sufficiency of the evidence.

**{¶19}** A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

**{¶20}** In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54.

**{¶21}** "An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶22}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also*, *In re: Christian,* 4th Dist. Athens App. No. 04CA10, 2004–Ohio–3146; *In re: C. W.,* 2nd Dist. Montgomery App. No. 20140, 2004–Ohio–2040.

{¶23} Pursuant to R.C. §2151.414(B), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, ... and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents.* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶24} Revised Code §2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any

one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

***

(16) Any other factors the court considers relevant.

{¶25} In the case *sub judice*, we find that the trial court's finding that E.F. could not be placed with Appellant-mother within a reasonable period of time was not against the manifest weight or sufficiency of the evidence. In concluding that the child cannot or should not be placed with Appellant within a reasonable period of time, there was enough evidence for the trial court to rely upon R.C. §2151.414(E)(1). The trial court heard testimony from caseworker Mitchell, who testified that Appellant-mother's initial case plan objective was to complete a parenting evaluation. (T. 1 at 6). Dr. Aimee Thomas from Northeast Ohio Behavioral Health testified that Appellant-mother has an IQ of 66 and functions at the level of an eleven-year-old child. (T. 1 at 49). She diagnosed Appellant with a Mood Disorder and Other Specified Personality Disorder, and noted Appellant's dependent traits. (T. 1 at 49-54). Dr. Thomas stated her opinion that it would be critical for Appellant-mother to participate in mental health treatment, psychiatric services, take all prescribed medication, participate in joint counseling, parenting classes, and maintain gainful employment and appropriate housing. (T. 1 at 55-56). Appellant's case plan was amended to reflect those recommendations. (T. 1 at 7). She also stated that she had "serious concerns" about Appellant-mother's ability to complete a case plan. (T. 1 at 54). The testimony further reflected that Appellant-mother's mental health case was closed for non-compliance after she failed to attend multiple appointments. (T. 1 at 8). Appellant-mother failed to engage in joint counseling. (T. 1 at 11). Appellant did participate in parenting classes but could not complete the minimal program requirements after two attempts. (T. 1 at 13). Appellant failed to secure appropriate housing. (T. 1 at 11). Appellant-mother was unable to demonstrate basic parenting knowledge and had to be

intensely monitored during visits with the child due to Appellant almost dropping the baby on multiple occasions. (T. 1 at 16). Caseworker Mitchell testified that she had never had a case during her seventeen (17) year career at SCJFS that had to be monitored so intensely during visitations. (T. 1 at 16). Appellant failed to complete almost every aspect of her case plan.

**{¶26}** In accordance with the evidence presented, the trial court found that Appellant-mother lost permanent custody of another child after a trial was held in Summit County. Caseworker Mitchell testified to the same. (T. 1 at 6). The concerns in that case were similar to the concerns in this case. (T. 1 at 6). In concluding that the child cannot or should not be placed with Appellant within a reasonable period of time, there was enough evidence for the trial court to rely upon pursuant to R.C. §2151.414(E)(11).

**{¶27}** For the aforementioned reasons, there was more than enough evidence for the trial court to conclude that E.F. could not and should not be replaced with Appellant within a reasonable amount of time.

**{¶28}** Appellant-mother also argues SCJFS did not make reasonable efforts to prevent the need for placement or make it possible for the child to return home.

**{¶29}** In *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, the Ohio Supreme Court explained that even though R.C. 2151.419, "by its terms," does not apply to motions for permanent custody, the agency "must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *Id.* at ¶ 43; *see also In re J.H.*, 2017–Ohio–1564, at ¶ 21. "If the agency has not established that reasonable efforts have been made prior to the hearing on a

motion for permanent custody, then it must demonstrate such efforts at that time." *In re C.F.* at ¶ 43. Further, where, as here, the juvenile court relies on R.C. 2151.414(E)(1) to support an award of permanent custody to the agency, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot be placed with the parents within a reasonable time or should not be placed with the parents. *See id.*; R.C. 2151.414(E)(1).

**{¶30}** Upon review, we find that the record reflects that the trial court made a finding of reasonable efforts on multiple occasions prior to the permanent custody hearing: April 4, 2016, June 15, 2016, October 14, 2016, and February 21, 2017.

**{¶31}** Further, the testimony presented at the permanent custody hearing, as set forth above, demonstrated that the Agency made reasonable efforts to assist Appellant-mother in completing her case plan. The Agency made referrals for her to participate in parenting evaluation and parenting classes, as well as individual counseling. (T. 1 at 20-21).

**{¶32}** In this case, the record supports the juvenile court's determination that SCJFS made reasonable efforts to reunify the family and engaged in "reasonable case planning" and "diligent efforts" to assist the parents in remedying the problems that caused E.F. to be taken from them.

**{¶33}** Based on the overwhelming evidence presented at trial, Appellant's First Assignment of Error should be overruled.

II.

{¶34} In her Second Assignment of Error, Appellant-mother argues that the finding that permanent custody was in the best interest of E.F. was against the manifest weight and sufficiency of the evidence.

{¶35} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶36} During the best interest portion of the trial, Caseworker Mitchell testified that E.F. is now a healthy, developmentally on track child, despite the fact that she was born premature. (T. 2 at 6). E.F. has been placed with her biological sibling, who has already been adopted by the foster family. (T. 2 at 6-7). The foster family also wants to adopt E.F. (T. 2 at 6-7). E.F. is bonded to her foster family and her biological sibling. (T. 2 at 6-7). Multiple family members were contacted in regards to placement, all of which were determined inappropriate or did not follow through with requests. (T. 2 at 7-9). Caseworker Mitchell provided her opinion that permanent custody was in E.F.'s best interest because she would benefit from adoption, she is not bonded to Appellant-mother,

and the benefit of permanency far outweighs the risk of harm due to severing Appellant's parental rights. (T. 2 at 9-10).

**{¶37}** Ms. Valerie Anderson, the Guardian ad Litem for the child, also agreed that permanent custody was in E.F.'s best interest. (T. 2 at 22). In her report submitted prior to the hearing, Ms. Anderson noted that it was "absolutely imperative that SCJFS (be) granted permanent custody" and that Appellant-mother "simply do(es) not have the parental skills necessary to keep (E.F.) well cared for and safe."

**{¶38}** Based on the foregoing, we find that the trial court's finding that permanent custody was in the best interest of E.F. was supported by the evidence.

**{¶39}** Appellant-mother's Second Assignment of Error is overruled.

**{¶40}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

By: Wise, John, J.

Gwin, J., and

Wise, Earle, J., concur.

JWW/d 0816